## Peter McMillan v. The State.

### No. 1704. Decided April 17, 1912.

#### Rehearing Denied May 15, 1912.

**1.—Robbery—Continuance—Motion for New Trial.**

Where the record on appeal showed that by a postponement or continuance of the case the attendance of all the alleged absent witnesses could have been secured; that due diligence was shown; that the absent testimony was material to show that the defendant was not the man who committed the alleged robbery; that the question of defendant's identity was a material issue; and that all this was borne out by the affidavits of the alleged absent witnesses, the motion for new trial should have been granted.

**2.—Same—Evidence—Details of Conversation.**

While it was competent to permit the officer to testify that another called his attention to a certain watch, etc., yet the details of the conversation with reference thereto should not have been admitted.

**3.—Same—Remarks by Court.**

Where the court in reading his charge tore out a portion thereof and remarked that he could not give a charge on circumstantial evidence because there was an eyewitness, he should have submitted an instruction withdrawing these remarks from the jury as requested.

**4.—Same—Bills of Exception.**

Where, upon appeal from a conviction of robbery, the bills of exception were incomplete, the matters therein set up could not be reviewed.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of robbery; penalty, eighteen years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was indicted for robbery, tried, and found guilty, and his punishment assessed at eighteen years confinement in the penitentiary.

1. When the case was called for trial appellant filed his first application for a continuance on account of the absence of Roxey Coldwell, Alma Webster, Lillian Rose, C. C. Marshall, John Jones, R. L. Jones, Alene Moss, Effie Flossman, John King, Ike Howeington, Reid Connor and Ned Walker, showing that in the application for these witnesses

he stated the place of residence and place of business of each of these witnesses, all of whom are alleged to reside in the city of Dallas. To the application he attaches the subpoenas showing that the sheriff had returned the process after the case was called for trial, endorsed, that the witnesses could not be found. He states he expects to prove by these witnesses that on the night before the defendant was arrested and charged with this offense alleged in the indictment, that all of above named witnesses were with the defendant at the Model Theatre at 2211 Elm Street in the city of Dallas, Texas, and by the witness Lillian Rose that the defendant called at her house at about 5:30 p. m. on the day before his arrest and remained there until about 7 or 7:30 o'clock of that evening and accompanied her to the Model Theatre, 2211 Elm Street, in the city of Dallas, Texas, where said witnesses and this defendant met all of the witnesses whose names appear above, or herein, and remained in company with said witness and the above named witnesses at said Model Theatre on said street in the city of Dallas, Texas, until about 11:30 or 12 o'clock at night, the same being the night before the defendant's arrest for this alleged offense. And by the witnesses Roxy Coldwell, Alma Webster, C. C. Marshall, John King, John Jones, R. L. Jones, Alene Moss and Effie Flossman and Ike Howeington, Ned Walker and Reid Connor, this defendant expects to prove and can prove that they were with this defendant on the night before he was arrested for this alleged offense at the Model Theatre, having met him there about 7:30 p. m. on said night and that they were all together from about 7:30 to 11:30 or 12 o'clock on said night hearing this defendant tell of his trip as special waiter for Ex-President Roosevelt to El Paso, Texas, and that this defendant left the said Model Theatre in company with Lillian Rose, Roxy Coldwell and Reid Connor. That by the witness Roxy Coldwell and Reid Connor and Lillian Rose defendant expects to prove and can prove that this defendant, Lillian Rose, Roxy Coldwell and Reid Connor went to the home of Lillian Rose from said theatre, reaching there about 12 or 12:30 p. m. and that the last named four witnesses engaged in a game of cards and continued to play until about 4 o'clock the following morning, and that the defendant and Reid Connor, Roxy Coldwell and Lillian Rose remained there in said house in the rear of 231 (old number) Live Oak Street the balance of said night, and that this defendant was not separated from the last named witnesses from 7:30 o'clock on the evening before his arrest until about daylight on the day of his arrest, and it would have been impossible for defendant to commit said offense on that night."

Attached to the motion for a new trial is the affidavit of a number of these witnesses who swear that they would testify to the facts alleged in the application, and a number testify that they were at the point designated in defendant's application, and attach affidavits that they were at such places on the day of the trial. The record makes it

plainly manifest that by a postponement or continuance of the case the attendance of all the witnesses could have been secured. He had his subpoena issued in ample time for all of them to have been summoned, as in his application he stated the street and number where they could be found. The testimony, if true, was material to his defense. Mr. Hamilton testified that on the night these witnesses say they would swear appellant was at the theatre with them, about 9 o'clock at night, the defendant knocked him down and robbed him of a watch and some money. That he had never seen defendant before that night, but he could identify him as the man, and his testimony has support in that of Mr. Zimmerman. Appellant in his testimony denies being the man, and says he can prove by the witnesses named that he was not the man; and a number of these witnesses swear they would have so testified if they had been summoned. The application for a continuance should have been granted, and it was error to overrule the motion for a new trial when the grounds in the application for continuance are supported by the affidavits of the witnesses that they would have so testified as they are in this instance.

2. Appellant in one of his bills also complains that the officer was permitted to detail a conversation between himself and Mr. Zimmerman in the absence of the defendant. It was proper to permit the officer to state that Mr. Zimmerman called his attention to a watch in his possession; that he returned to the police station and examined the records, and then took possession of the watch, which proved to be the watch lost by Mr. Hamilton, but the other details of the conversation ought not to have been admitted.

3. It is also made to appear by a bill, that while the court was reading his charge to the jury, tearing out a portion of his charge, remarked: "I can't give a charge on circumstantial evidence because there was an eyewitness." This remark was made in the presence and hearing of the jury, and defendant's counsel requested the court to instruct them not to consider the remark, contending that such remark was calculated to impress the jury that the statement of Mr. Hamilton was true, and his identification of defendant sufficient to authorize his conviction. The remark would perhaps have had this tendency, and should not have been made, but if made in an unthoughted moment, the instruction requested by defendant should have been given.

4. The other bills are too incomplete for us to review the matters set up therein. We are inclined to think they would present no error, but for the errors above pointed out the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

[Rehearing denied May 15, 1912.—Reporter.]