ONIE AND HORACE WHITE v. THE STATE.

No. 6432.    Decided January 18, 1922.

1.—Murder—Continuance—Motion for New Trial—Diligence—Rule Stated—Affidavit.

If diligence is shown and the absent testimony appears material and probably true, and of such character as that same might have produced a different result, a new trial should be granted, and where, as in the instant case, the absent witness made affidavit that he would have sworn to the facts stated in the application, the question of probable truth of such testimony is no longer one for the decision of the trial court. Following Baines v. State, 42 Texas Crim. Rep., 510, and other cases.

2.—Same—Deadly Weapon—Charge of Court—Requested Charge.

Where, upon trial of murder, there was a sharp contention as to whether the deceased had a pistol and was making any attack or demonstration with it when he was shot, a requested charge presenting the principle embodied in Article 1106, P. C., was correctly refused, inasmuch as the main charge presented all the theory of defense in the requested charge.

3.—Same—Argument of Counsel—Practice on Appeal.

While this court refrains from a discussion of the argument of private prosecutor, as the same will not likely occur again, it, in the meantime, urges the necessity for care in the argument of counsel.

4.—Same—Evidence—Immaterial Matter—Impeaching Witness.

Where the impeaching testimony was upon an immaterial matter, it should not have been admitted in evidence, and after the elimination of such testimony, it will carry with it the charge of the court relating thereto, and the same need not be further discussed.

Appeal from the District Court of Brazos. Tried below before the Honorable W. C. Davis.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*H. S. Moorehead, Henderson & Ransom,* and *Garrison, Pollard & Berry,* for appellant.—On question of motion for continuance and motion for new trial: Mathason v. State, 229 S. W. Rep., 548; Baxter v. State, 68 Texas Crim. Rep., 136; Rhea v. State, 67 id., 197; Lawhorn v. State, 46 id., 555; Long v. State, 48 id., 435.

On question of charge of court, on deadly weapon: White v. State, 225 S. W. Rep., 511; McMichael v. State, 49 Texas Crim. Rep., 425; Myers v. State, 163 S. W. Rep., 432.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellants were convicted in the District Court of Brazos County, and their punishment fixed at confinement in the penitentiary for a period of twenty years.

Appellants were jointly charged with the murder of Dr. B. Harrison. The case originated in Grimes County in 1918, and was transferred to Harris County, and subsequently to Brazos County, where the instant trial was had. When the case was called for trial appellants presented their motion for continuance, the overruling of which is here presented as error. Continuance was sought because of the absence of Mrs. Mabel White, wife of appellant Onie White, it being set up that at the time of making such application the witness was in Eastland County and in such physical condition as that she could not attend the trial. A sworn certificate of her physician of date March 7, 1921, was attached to said application, certifying that Mrs. White was seven months advanced in pregnancy, and that because of certain complications named, she should not undertake a long railroad journey nor be subjected to a severe mental strain. The application was controverted by the State and certain affidavits were attached, only one of which relates to the testimony of Mrs. White. Dr. H. B. Harrison was killed in Grimes County, Texas, on January 8, 1918. The killing took place at a point near the house occupied by appellant, Onie White, and his family. Onie White and his brother, a codefendant, Horace White, and deceased were the only parties immediately present at the homicide. The State introduced three eyewitnesses who stated they were near enough to the scene to witness the killing. For appellants, and besides themselves, their father was their only eyewitness, and he stated that he was five or six hundred yards from the scene of the difficulty and saw a part of same.

There seems no controversy of the fact that Mrs. Mabel White had been duly summoned as a witness, and we are of the opinion that the certificate of the physician sufficiently showed her inability to be present. The application sets up that Mrs. White was at her home at the

time of the homicide, about fifty yards distant, and that she saw most, if not all, of the fatal difficulty, and facts are detailed which, if true, would make her testimony very material in support of the theory that the shooting was in self-defense or defense of a brother. Said application was overruled. To their motion for new trial appellants attached the affidavit of Mrs. White, in which she says that if present she would have testified to facts which appear identical with those contained in the application. The motion for new trial was denied, and the error here set up is predicated on such action. The question is not a new one. Our opinions uniformly agree that if diligence is shown and the absent testimony appear material and probably true, and is of such character as that same might have produced a different result, a new trial should be granted. Many of our decisions, apparently beginning with Baines v. State, 42 Texas Crim. Rep., 510, hold that if the absent witness make affidavit that he would have sworn, if present, to the facts stated in the application, and such affidavit be attached to the motion for new trial, the question of the probable truth of such testimony is no longer one for the decision of the trial court. Baines v. State, 42 Texas Crim. Rep., 510; Freeman v. State, 75 S. W. Rep., 505; Lawhon v. State, 46 Texas Crim. Rep., 555; Long v. State, 48 Texas Crim. Rep., 434; Thomas v. State, 51 Texas Crim. Rep., 329; McMillan v. State, 66 Texas Crim. Rep., 288; Rhea v. State, 67 Texas Crim. Rep., 198; Valigura v. State, 68 Texas Crim. Rep., 12; Mathason v. State, 229 S. W. Rep., 548. This, however, should not be understood to necessitate a new trial unless the materiality of such absent testimony be such as that, if true, it would likely produce a different result upon another trial. Branch's Ann. P. C., Sec. 338, and authorities cited. Nor would it call for the granting of a new trial when there was other evidence cumulative of same, present or available to appellant so that it reasonably appeared that no injury resulted from the absence of such testimony. The whole purpose of any trial ought to be the attainment of justice; and this is the supposed result of following where the signboard of the law points the way. The legal and reasonable presumption in every case is that the accused is innocent of crime until a contrary judgment by an impartial tribunal is rendered in a proceeding wherein each party has been accorded every fair chance to present all the facts bearing on the case. If one accused of crime be not ready to try for that he had not his witnesses, he must first show that in manner as fixed by law he had tried to get them, and that their word would bear out his claim. The court may not agree, and may refuse his plea; in which case he must make it appear upon the trial that what he claimed for said absent witnesses, is probably true. If he be held guilty by the verdict of the jury, he may make his motion for new trial and show as part of same that the witnesses sought have here made their affidavits attached, by which it is shown that they would have testified as stated in said application. This being done, the ac-

cused has gone as far as he is able, and unless the lower court be satisfied that had the absent testimony been present no other conclusion would have been reached than one of guilt, a new trial should be granted. In the instant case there can be no question of the materiality of the testimony of Mrs. White.. That such testimony would not be cumulative is clear. The facts sought to be obtained from her testimony were sworn to by no one save the two accused. No room is left thus to doubt the materiality of her testimony. The only point made by the State in its controversy appears in the affidavit of a witness who stated that he saw Mrs. White soon after the killing, and that she knew but little as to how same took place, and did not say that she heard any conversation but did state that she tried to keep her husband from taking his gun out of the house, and asked him what he wanted to do with it. The facts in said affidavit are short and appear to us to state conclusions rather than facts, and would not. seem to justify a finding that Mrs. White's testimony was thereby shown not to be material. We think the motion for new trial should have been granted.

There was a sharp contention as to whether or not Dr. Harrison had a pistol and was making any attack or demonstration with it when he was shot. Appellant claimed that he had such pistol and was making such attack. They asked special Charge No. 4 presenting the principle embodied in Article 1106, Vernon's P. C. We do not think the refusal of such special charge shows any error. In his main charge the court gave the following:

"If deceased was armed with a pistol at the time he was killed and was making such an attack on Horace White, and the manner of the use of such pistol, viewed from the standpoint of the defendants, was such as was reasonably calculated to produce death or serious bodily injury, then the law presumes the deceased intended to murder or inflict serious bodily harm or injury upon the said Horace White."

We think this gave to appellant all to which they were entitled and presented their theory correctly. The evidence showed that the pistol found near the body of deceased was not in condition for use as a firearm. Conceding this, it is not necessarily a deadly weapon, and was not, within the meaning of said article just referred to, a weapon such as would have been calculated to produce death or serious bodily injury, and said legal presumption that death or injury was presumed from the use of the weapon, did not arise. That part of the main charge quoted gave to appellants the right to act in defense of self or a brother if to them said weapon appeared deadly, and this fully presented the law applicable to the facts.

We refrain from a discussion of the argument of private prosecution on the trial, as same will not likely occur again. We have often written of the necessity for care in the use of only legitimate discussion of facts and the avoidance of abusive language and the expression of private opinions.

The testimony of Will Mallet was admitted to impeach the witness A. N. White, the father of appellants. As we view same it was upon an immaterial matter and should not have been admitted. A. N. White denied going to Dr. Harrison's cattle pen with Mallet some months before the killing, and after a difficulty between said witness and Dr. Harrison; and denied there engaging in a friendly conversation with Dr. Harrison, and stated that he had not spoken to Dr. Harrison since said difficulty. Mallet affirmed the fact of going to said cattle pen with A. N. White, but said if there was any talk between Dr. Harrison and White except about cattle he did not remember. Mallet's testimony that White went to said pen and there talked with Dr. Harrison about cattle, may have shown that White had not told the truth in his denial of such facts, but we cannot see how such facts had bearing on any issue in this case. Appellants were not present and were not bound by any of such conversation, and same shed no light upon the animus or feeling of the witness A. N. White, and seems to us clearly open to the objection that such purported impeaching testimony was on an immaterial matter. Branch's Ann. P. C., Sec. 165, and authorities cited. If this testimony of Mallet be eliminated, it will carry with it the charge of the court relating thereto, of which complaint is also made, and for this reason we forego any discussion of same.

For the reasons stated above the judgment of the trial court will be reversed and the cause remanded.

*Reversed and remanded.*